UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **TOWN OF IOWA WATER & SEWER** | **CASE NO. 2:22-CV-02300** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TOKIO MARINE SPECIALTY INSURANCE CO** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment" (Doc. 17) filed by Plaintiff, Town of Iowa ("Iowa") who moves for an order finding that Defendant, Tokio Marine Specialty Insurance Company's ("Tokio") policy of insurance provides coverage for wind damage to the Iowa's oxidation pond grid baffle system caused by Hurricanes Laura and Delta.

## FACTUAL STATEMENT

Iowa owns the wastewater treatment facility in Iowa, Louisiana.[1] Tokio issued a policy of insurance during the relevant time period, which policy specified certain Locations and Buildings.[2] On August 27, 2020, and October 9, 2020, Hurricanes Laura and Delta made landfall and Iowa's baffle/grid system was damaged beyond repair and had to be replaced.[3]

---

[1] Tokio disputes this fact considering that Iowa did not submit any summary judgment evidence to establish ownership of the undefined "wastewater treatment facility."
[2] Doc. 17-3, pp. 5-6; Doc. 17-4, p. 5.
[3] Tokio disputes this as Iowa has submitted no summary judgment evidence for this statement of fact. Specifically, Tokio remarks that there is no evidence of damage, or a cause of damage presented for the undefined "baffle grid system." Defendant's exhibit 1, ¶¶ 20-31.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Iowa submitted a claim for damages to the grid baffle system, however, Tokio has denied coverage for the damage because it considered the grid baffle system as "mobile equipment." Iowa argues that it is not "mobile equipment" because it is permanently attached to the levee on the north and south sides of the oxidation pond. Additionally, Tokio claims that the policy excludes coverage for any body of water, and because the grid system is partially in the water, it is not a covered risk. Finally, Tokio argues that Iowa is not the real party-in-interest because Iowa received a grant from FEMA to cover the cost of the grid baffle system.

Tokio presents the following table of Locations and Buildings, which it identifies as being insured under the policy:

| LOC # | BLD # | ADDRESS | BLD LIMIT | CONTENTS LIMIT | DESCRIPTION OF OPERATIONS |
|---|---|---|---|---|---|
| 001 | 001 | 106 South Kinney Ave | $1,300 | $1,500 | Chlorination RM |
| 001 | 002 | 106 South Kinney Ave | $4,550 | $4,895 | Filter Plant |
| 001 | 003 | 106 South Kinney Ave | $8,100 | $2,000 | Wearhouse [sic] |
| 001 | 004 | 106 South Kinney Ave | $400 | $0 | Aux Pump Shed |
| 001 | 005 | 106 South Kinney Ave | $75,000 | $0 | H2O Treat Plant |
| 001 | 006 | 106 South Kinney Ave | $1,500,000 | $0 | Tanks, Bins, Silos |
| 001 | 007 | 106 South Kinney Ave | $350,000 | $0 | Filter System |
| 001 | 008 | 106 South Kinney Ave | $182,718 | $0 | BKWSH Rec System |
| 001 | 009 | 106 South Kinney Ave | $172,800 | $0 | Control |
| 001 | 010 | 106 South Kinney Ave | $50,000 | $0 | Maintenance |
| 001 | 011 | 106 South Kinney Ave | $83,104 | $0 | H2O Treat Plant |
| 001 | 012 | 106 South Kinney Ave | $46,768 | $0 | Standby Gener |
| 001 | 013 | 106 South Kinney Ave | $46,800 | $0 | Standby Gener |
| 002 | 001 | 610 Railroad Ave | $600,000 | $0 | Lift Stations |
| 002 | 002 | 610 Railroad Ave | $1,500,000 | $0 | Baffle System Aerators/Blwrs |
| 003 | 001 | Various locations throughout the system | $25,000 | $0 | Fire Hydrants |

Page 3 of 11

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* at 517. The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.* Insurance policies are to be liberally construed in favor of coverage. *Capital Bank & Trust Company v. Equitable Life Assur. Soc. Of U.S.*, 542 So.2d 494, 496 (La. 1989). Ambiguities must be resolved by determining how a reasonable insured would have construed the clause at the time the policy was entered into. *Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989).

It is not the insurer's intent that is relevant to the interpretation of the policy, but rather how the words would be understood by a reasonable person in the shoes of the insured. *Dawson Farms, LLC v. Millers Mutual Fire Ins. Co.*, 794 So.2d 949, 952 (La.App. 2 Cir. 8/1/01). The policy must be read as a layman would have read it, not an insurance expert. *Id.*

*FEMA grant*

Tokio suggests that Iowa seeks recovery for damage that it has already been paid by FEMA. Tokio submits summary judgment evidence of a FEMA grant totalling $1,521,458.34.[4] Additionally, Tokio submits the 2023-2023 Town of Iowa Budget, which identifies the budgeted amount received as FEMA Disaster Assistance and notes the following "~2023 $1.6 m reimb. Laura/Delta Debris removal; $1.5 m Oxidation Pond."[5]

Iowa claims it has not received the funds and that the grant was awarded provisionally because there has been no determination yet that the Tokio policy does not provide coverage for the damaged grid baffle system. More significantly, Title 42 U.S.C. § 5155 provides that "[a] person receiving Federal assistance for a major disaster shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source." Iowa is legally obligated to diligently pursue all available insurance coverage or risk losing the grant. 44 CFR § 206.191(e)(2). The Court finds that Iowa is the real party-in-interest in this case.

*Does the original Complaint include damage of the grid baffle system located at 610 Railroad Ave?*

Tokio argues that Iowa's Complaint fails to state a cause of action for alleged damage at 610 Railroad Ave. Tokio notes that ¶ 3 of the Complaint alleges that "Defendant insured the property of Plaintiff at 106 Kinney Ave., Iowa, Louisiana, under Policy No. PPK2092445. . ." Paragraph 6 alleges that the "above property was damaged as a result of

---

[4] Defendant's exhibit 2, Declaration of Matthew Snow, ¶¶ 11-12.
[5] *Id.*

winds and/or wind driven rain associated with Hurricane Laura and/or Hurricane Delta. Paragraph 7 alleges that "Defendant was notified of the loss and inspected the property, at which time it had actual proof of the loss sustained at location [sic] of the property insured."[6] Thus, Tokio argues that Iowa has failed to state a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), because it failed to allege any damage of property at 610 Railroad Ave.

Here, Iowa relies on Rule 8 of the Federal Rules of Civil procedure, which requires "a short plain statement of the claim." Iowa argues that under the Federal Rules of Procedure, pleadings perform the function of giving notice to the opposing parties of the claim being asserted. Iowa remarks that the parties' Initial Disclosures, discovery requests, and motion practice have focused on damage to the waterworks building and wastewater treatment facility. Under Federal Rule of Civil Procedure 15(b), a pleading may be amended during or after trial, or even after judgment, to conform to the evidence.

The Complaint identified the policy at issue, which clearly stated that it provided coverage for structures at both 106 South Kinney Ave. and 601 Railroad Ave. Iowa remarks that the parties exchanged thousands of documents in their Initial Disclosures and explained their respective positions with regard to the property damage at 610 Railroad Ave. During the Streamlined Settlement Procedure, Iowa submitted demands for both the water works buildings and the wastewater treatment facility. Additionally, Plaintiff propounded discovery to Tokio requesting an explanation as to its denial of coverage

---

[6] *Id.*

concerning the grid baffle system at the wastewater treatment facility. Considering all, the Court finds that Tokio has had ample notice of Iowa's claim for insurance coverage as to the grid baffle system, and thus has suffered no prejudice, despite the fact that the original Complaint failed to mention the 601 Railroad Ave address.

*Is the grid baffle system covered under the policy?*

Iowa's Motion for Partial Summary Judgment requests that the Court declare that the grid baffle system is covered under the policy. Tokio disputes this and argues that the grid baffle system is not a "building" as identified in the policy, thus, there is no coverage. This Court finds otherwise.

The policy provides:

> PROPERTY AND INLAND MARAINE COVERAGE PART –
>
> WATER DISTRICTS INSURANCE PROGRAM
>
> A. Coverage
>
> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss.
>
> 1. Covered Property
>
>    Covered Property as used in this Coverage Form, means the type of property described in this section subject to the Limits of Insurance shown in on the Declarations for that type of property . . . .
>
>    k. Real and personal property of the Insured including the Insured's interest in improvements and betterments to buildings occupied but not owned by the Insured.[7]

---

[7] Plaintiff's exhibit 1, Tokio Policy, p. 1.

While the policy does not cover "land, atmosphere or any body of water,"[8] it does cover "all risk of direct physical loss or damage to Covered Property "except as expressly excluded or limited,"[9] at replacement cost value if the damaged property is repaired or replaced.[10]

Tokio relies on its expert, Dr. Lial Tischler's explanation of the baffle grid system.[11] Dr. Tischler explains as follows:

> The floating partitions used to contain the floating duckweed are not baffles because they do not have any effect on the pathway of water flow between the three partial mix cells. Mr. Spinks' use of the term "grid baffle" implies that the hydraulic baffles and floating partitions used to contain duckweed are a single unit and does not distinguish between he capital and operating costs of each. Contrary to what Mr. Spinks implies in his report, the hydraulic baffles and the floating partitions used to contain the duckweed are not a single unit. Each pf these pieces of equipment, as discussed below, have distinctly different functions.[12]

While the Court appreciates Mr. Tischlers' knowledge as a consulting environmental engineer, and the fact that he has provided wastewater consulting for over 52 years,[13] his curriculum vitae does not profess to include the construction of grid baffle systems. Tokio argues that Buildings # 1 and #2 include only the polishing reactor and the chlorine contact chamber, but does not include the grid baffle system, which is attached to the oxidation pond. There are only two buildings or structures at the water treatment facility on 610 Railroad Ave, Iowa, Louisiana.

---

[8] *Id.* p. 2.
[9] *Id.*
[10] *Id.* p. 16.
[11] Defendant's exhibit 1, Dr. Lial Tischler expert report, Doc. 24-1.
[12] *Id.* ¶ 30.
[13] *Id.* p. 1, ¶¶ 3 and 4.

Iowa argues that there is only one grid baffle system at 610 Railroad Ave. The Court has carefully reviewed the policy and notes the following. The Tokio General Policy Information[14] provides a Property Schedule Information. The subject insured property is identified as Location #2, Building #2 at 610 Railroad, Iowa, Louisiana, 70647, with coverage of $1,500,000. The POK description code is "14," which is identified as "Water-Sewer."[15] The BF description code is "903," which is identified as a "WasteWater Treatment Plant."[16] As noted above, the policy designates Location #2, Building #2 located at 610 Railroad as being insured, and is identified in the policy under "Description of Operations" as a "Baffle System Aerators/Blwrs" with a "Bld Limit" (Coverage) as $,1500,000.[17]

The policy identifies Building #1 as "Lift Stations." Building #1, which pumps water from the oxidation pond into the polishing station does not have a baffle system with aerators and blowers; the only baffles in place in the entire wastewater treatment facility are the baffles suspended in the oxidation pond.[18]

Plaintiff has submitted the Declaration of James T. Spinks,[19] the Vice-President and Chief Construction Manager for Spinks Construction, Inc., who installed the original grid system for the oxidation pond for Iowa. Mr. Spinks also provided a rough estimate of the costs to construct the concrete structure containing the polishing reactor and chlorine

---

[14] Doc. 17-4.
[15] *Id.* p. 6.
[16] *Id.*
[17] Doc. 17-3, p. 5-6; Doc. 17-4, p. 5.
[18] Declaration of James T. Spinks, ¶ 6, Doc. 17-5.
[19] *Id.*

contact chamber, referred to a Building #1 at a cost of $600,000—the exact amount that the policy provides for coverage.

> A concrete structure, which contains the polishing reactors and chlorine contract chamber is located on the west side of the oxidation pond. It draws water from the pond for additional treatment, after which the treated water is released into the estuary on the west side of the reactor/contract chamber structure. The polishing reactor injects compressed air from the bottom of the reactor chamber to aerate the water. Then the water travels into the chlorine chamber where chlorine is added to kill any remaining harmful bacteria. From there the treated water is released into the estuary.[20]

Mr. Spinks also replaced the damaged grid baffle system, which was completed in January 2024.[21] Charles Ramour, the Maintenance Supervisor for Iowa declared that he observed the damage to the grid baffle system caused by Hurricanes Laura and Delta.[22] The grid baffle system is secured by cables on the north and south banks of the pond. Aerators or blowers are installed in the 14-acre pond and are activated automatically to spray pond water into the air to increase the oxygen content of water in the oxidation pond.[23]

Louisiana Civil Code article 462 provides that "[t]racts of land, with their component parts, are immovable." "Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees, are component parts of a tract of land when they belong to the owner of the ground." Louisiana Civil Code article 463. "Things incorporated into a tract of land, a building, or other

---

[20] *Id.* ¶ 9.
[21] Declaration of Charles Ramour, ¶ 6, Doc. 17-6.
[22] *Id.* ¶ 4.
[23] Plaintiff's exhibit 4, Declaration of James Spinks; Plaintiff's exhibit 5, Declaration of Charles Ramour.

construction, so as to become an integral part of it, such as building materials, are its component parts." Louisiana Civil Code article 465.

Immovable property is "real property." Louisiana Civil Code article 462. *Atain Specialty Ins. Co. v. VIG II, LLC*, 2017 WL 3867672, at *7 (E.D. La. Feb. 9, 2017) citing *In re Hari Aum*, *LLC*, 714 F.3d 274, 283 n.7 (5th Cir. 2013).

The Court finds that Building #1 is the polishing reactor and chlorine contact chamber that are housed in separate compartments but contained in a single concrete structure with the same foundation and is estimated to cost $600,000 to replace, the exact same amount that the Tokio policy provides insurance coverage. The Court further finds that Building #2 identified in the policy under "Description of Operations" as a "Baffle System Aerators/Blwrs" with a "Bld Limit" (Coverage) as $,1500,000, is the grid baffle system that is the subject of Plaintiff's motion. To read and interpret the Tokio policy any other way would provide an absurd result. Furthermore, to the extent that the term "Building" creates any ambiguity as to the identification of the insured property, such ambiguity must be construed against the author of the policy—Tokio.

## **CONCLUSION**

For the reasons explained herein, the Court will grant Plaintiff, Town of Iowa's Motion for Partial Summary Judgment (Doc. 17).

**THUS DONE AND SIGNED** in Chambers on this 22nd day of March, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE